HON. MICHAEL CURLEY Deputy Commissioner and Counsel, Department of Commerce
This is in reply to your inquiry seeking advice concerning the question of placing commercial advertising in two Commerce Department publications, BINYS and VACATIONLANDS.
In a memorandum in connection with your inquiry you state that the nature and purpose of BINYS is:
 "To describe healthy and prosperous individual businesses in New York as an indicator of the overall quality of the business climate in New York."
and that the nature and purpose of VACATIONLANDS is:
 "To describe the natural and commercial attractions of New York as well as services such as food, lodging and transportation as a means of inducing tourists to visit such attractions."
You note that whereas to this point the publications have been financed solely by State funds, this source has been so severely restricted by budgetary cutbacks that unless alternate financing is found, the Commerce Department may be compelled to cease publication of BINYS and VACATIONLANDS.
Your question focuses on whether or not these two State publications may be printed with commercial advertising, the revenue from which will defray the expenses of publication at a time when such expenses threaten the curtailment or discontinuance of the publications. You suggest that the presence of commercial advertising will advance the objectives of convincing the readers of BINYS that New York is a good place to do business and that advertising in VACATIONLANDS will lend credence to the calibre of the services such as food, lodging and transportation described therein. You propose that the character and quality of the advertising can be controlled by establishing stringent standards in such areas as New York State products, no solicitation of funds, no advertisements conveying impression of governmental approval of the product or service advertised and so on.
Commerce Law, § 100 provides that the Commissioner of Commerce acting by and through the Department of Commerce shall have power and it shall be his duty to undertake means of promoting and encouraging the prosperous development and protection of New York business, industry and commerce (section 100, subd. 1), to compile and make available information relating to current business conditions (section 100, subd. 7) and to publicize the material, economic, scenic and historic attractions of the State which make it a desirable place for business, residence and vacation (section 100, subd. 14, 15 and 16). Section 100, subd. 17 authorizes the Commissioner:
 "To encourage and cooperate with other public and private organizations or groups in publicizing the attractions and industrial advantages of the state."
Commerce Law, § 100, subd. 37 states:
 "the department may enter into contracts with any person, firm, corporation or governmental agency, and do all things necessary or convenient to carry out the functions, powers and duties expressly set forth in this article."
I am aware that previous opinions of the Attorney General have in some instances found support for (see 1939 Atty. Gen. 380; 1958 Atty. Gen. 165) and in one instance found support lacking for (1955 Atty. Gen. 181) contractual arrangements between State agencies and private industry under circumstances similar to those which are present herein. I find that in each instance it has been necessary to examine the legal authority for the agency's functions and objectives and to apply such authority to the facts at hand.
In my opinion, the broad scope of the provisions of the Commerce Law referred to and quoted above, provide the necessary authortity, subject to the stringent standards to which you allude in your letter and as may be dictated by law and common sense, for solicitation and inclusion in BINYS and VACATIONLANDS of commercial advertising to defray the costs of producing these publications.